IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IN THE MATTER OF THE SEARCH OF:
SANDISK CRUZER GLIDE 16GB                    Case No. 4:18mj115-CAS
USB DRIVE SERIAL NUMBER
SDCZ 60-016G
_____/

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, John Milhous, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of one flash drive, specifically a SanDisk Cruzer Glide 16GB USB drive Serial Number SDCZ 60-016G (hereinafter "Device") (as more fully described in Attachment A), which is currently in law enforcement possession in Tallahassee, Florida. The extraction from these items of electronically stored information is described in Attachment B

2.  I am a Special Agent with the USSS and have been so employed for approximately 19 years. I base this affidavit on my personal investigation and the investigation of other law enforcement agents involved in this investigation with whom I have spoken.

3. During the past twenty two (22) years of law enforcement, I have received fifty-two (52) weeks of specialized training by the United States Secret Service. This training focused upon methods of unlawful counterfeiting and electronic access fraud, as well as the means by which individuals capture, launder and conceal their profits from fraudulent activities, and the use of assets to facilitate unlawful fraudulent activity, and the law permitting the forfeiture to the United States of assets used or intended to be used to facilitate the fraud violations.

4. As an agent with the United States Secret Service, I have also been involved in the execution of several state and federal search warrants over the past nineteen (19) years. Materials searched for and recovered during the execution of these search warrants include but are not limited to the following: evidence consistent with the manufacturing of counterfeit currency, computers and or computer systems, central processing units, wireless communications devices, external and internal storage equipment (i.e. floppy disks, CDs, thumb drives, etc.) or media, terminals or video display units, network devices and peripheral equipment such as magnetic stripe reader/writers, cables, keyboards, printers, modems or acoustic couplers, automatic dialers, computer-related documentation, and computer data, all of which have been or potentially could have been utilized in the commission of the offense referenced below.

5. I have extensive experience in debriefing defendants, conspirators, witnesses, and informants who have been involved or are involved in illegal fraud related activities.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Edry Acosta-Cabrera and Yilian Hernandez-Torres have violated 18 U.S.C. §§ 1028A (aggravated identity theft) and 1029(a)(3) (possession of fifteen or more unauthorized access devices) (hereinafter "Subject Offenses"). Moreover, there is probable cause to believe that the Device described in Attachment A contain evidence of Acosta-Cabrera and Hernandez-Torres violation of the Subject Offenses.

8. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

9. On February 22, 2018, a vehicle driven by Edry Acosta-Cabrera and occupied by Yilian Hernandez-Torres was stopped by the Florida Highway Patrol

(FHP) for following another vehicle too closely. During the traffic stop, consent to search the vehicle was asked for and provided by the driver, Acosta-Cabrera.

10.     During the search of the vehicle, a red cloth lunch bag was located in the passenger floorboard where Hernandez-Torres had been sitting. A search of this bag revealed a gray inline gas pump skimmer, commonly used to unlawfully record credit/debit card numbers while a victim is paying for gas at the pump. Three additional inline gas pump skimmers were located inside of a small container secreted inside of the driver's side interior rear quarter panel.

11.     The search of the vehicle further revealed what is believed to be two (2) gas pump keys. One was located in the driver's door handle pocket and the other was recovered from inside of Hernandez-Torres. Other items located in the search include three (3) gas pump security stickers; a hand written note stating, "517 E. Maple Ave (bp) Geneva, Al – 36340 – pom 4 (com 17"; and a gas receipt from a Citgo gas station located at 203 North Commerce, Geneva, Alabama. Hand written on the receipt was "#1_com 14."

12.     Subsequent investigation revealed that the addresses on the note and the receipt were consistent with gas stations. Additionally, law enforcement believes that the reference to "poms" referred to gas pumps at that the stations because two (2) additional inline gas pump skimmers were recovered at the corresponding pumps at these gas stations in Geneva, Alabama. An examination

of these skimmers revealed a total of two hundred and five (205) compromised credit/debit account numbers.

13.   After the FHP Trooper approached the vehicle, the passenger, Hernandez-Torres, asked for permission to go into the convenience store adjacent to the traffic stop and use the restroom. She insisted on taking her purse with her.

14.   Later during the stop, Acosta-Cabrera and Hernandez-Torres were handcuffed and placed in the rear of a patrol vehicle. A review of the recording of the couple's conversation in the patrol vehicle revealed the conversation between Acosta-Cabrera and Hernandez-Torres about how much trouble they were in and how law enforcement had found everything in the vehicle. Further, Acosta-Cabrera asked Hernandez-Torres what she did with "them," which was followed by a conversation between the two about the bathroom of the convenience store. A search was then conducted of the restroom used by Hernandez-Torres. The search revealed that the trash was already taken out by the store clerk, who advised that a wallet was found and discarded in the outside dumpster.

15.   A subsequent search was conducted of the dumpster which resulted in the discovery of a wallet. The wallet contained ten (10) gas/fuel reward cards that were found to be re-encoded with compromised credit/debit account information.

16.   The Sandisk Cruzer Glide (Device) was inside the vehicle along with the items noted above. Based on my training and experience, I am aware that flash

drives are used to store electronic information, often obtained by nefarious means. While no device was present with a USB port associated with a flash drive, these devices are often used to transport stolen information from place to place or from a supplier to a buyer. Given the location of the Device in the vehicle with the skimmers and other items, there is probable cause to believe the Device may also contain electronic evidence related to the Subject Offenses.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the

structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

18. Based on my training, experience, and research, I know that a flash drive is capable of storing electronic records and data. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually

disappear; rather, that data remains on the storage medium until it is overwritten by new data.

20. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

21. Wholly apart from user-generated files, computer storage media contain electronic evidence of how a device has been used, what it has been used for, and who has used it.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution"

evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a storage medium is evidence may depend on other information stored on the storage medium and the application of knowledge about how a storage medium behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit searching, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search

warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
John Milhous
Special Agent
United States Secret Service

Subscribed and sworn to before me on this 19th day of July, 2018.

_____
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

The property to be searched is:

A SanDisk Cruzer Glide 16GB USB drive Serial Number SDCZ 60-016G ("Device")

This warrant authorizes the forensic examination of this Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device drive described in Attachment A that relate to violations of 18 U.S.C. §§ 1028A (aggravated identity theft) and 1029(a)(3) (possession of fifteen or more unauthorized access devices) ("Subject Offenses") including:

   a. Compromised credit/debit account numbers relating to the Subject Offenses;

   b. Photographs of fraudulent activity relating to the Subject Offenses;

   c. Any correspondence, including memoranda, notes, diaries, documents, and journals relating to the Subject Offenses;

   d. Travel records relating to the Subject Offenses;

   e. Personal identifying information, including names, dates of birth, social security numbers, driver's license information, passport numbers, passport information, account numbers, membership numbers, usernames, and passwords, as well as records reflecting the source and uses of fraudulent information;

   f. Financial records relating to the Subject Offenses; and

g. Photographs and videos relating to the Subject Offenses, or constituting evidence of the violations described above, or showing that Edry Acosta-Cabrera or Yilian Hernandez-Torres possessed or used the Device.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, text messages, telephone calls, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.